**Onilia NEAL**

v.

**Robert BERGLAND, Secretary of Agriculture, et al.**

**Civ. No. 3-80-36.**

United States District Court, E. D. Tennessee, N. D.

Feb. 26, 1980.

---

Lenny C. Croce, Neil G. McBride, Oak Ridge, Tenn., for plaintiff.

Richard K. Harris, Asst. U.S. Atty., Scott, Humphreys & Humphreys, Edward M. Ellis, Knoxville, Tenn., for defendants.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

Plaintiff filed this action in the Circuit Court of Roane County, Tennessee, claiming damages arising out of the defective construction of a prefabricated home financed by a loan from the Farmers Home Administration (FmHA). Because several federal officials were named as party defendants, the United States Attorney removed the case to this Court pursuant to 28 U.S.C. § 1442. Subsequently, a Rule 12(b) motion was filed to dismiss the federal defendants for lack of subject matter jurisdiction and for failure of plaintiff to state a claim upon which relief can be granted. That motion is currently before this Court.

For the purposes of this motion, we shall accept as true the facts alleged in the complaint. Plaintiff avers that in August, 1976, she applied for a Rural Housing Loan with FmHA in Roane County, Tennessee, which loan was approved on or about June 9, 1977. FmHA is an agency under the auspices of the Department of Agriculture authorized to make such loans by § 502 of Title V of the Federal Housing Act of 1949, as amended. 42 U.S.C. § 1472. Shortly after the loan was approved, plaintiff entered into a contract with defendant Home Marketing Associates for the purchase and construction of a prefabricated home on a small lot she had recently purchased. Home Marketing warranted that it would install a "General Electric . . . 220 Volt . . . 15 kw Btuh" heating system. There are in addition some 13 other defects specified in the complaint.

**514**

Plaintiff further alleges that while this house was being built, the structure was inspected three times by a representative of FmHA. She says that because the representative failed to note the alleged defects and deviations from the plans, the house is of substandard quality and she has been damaged.

Plaintiff claims that both Home Marketing and the FmHA, and its representatives, are liable to her for the amount of damages she has sustained. She proceeds for damages against FmHA on three theories: to wit, breach of contract, negligence, and detrimental reliance. In addition, by an amended complaint, plaintiff seeks mandamus to compel the Secretary of Agriculture to "pay or otherwise compensate plaintiff" for the construction defects in her dwelling. We shall address these theories in order. In doing so, of course, we express no opinion about the merits of plaintiff's claim against the non-federal defendants.

### (1) *Breach of Contract*

Plaintiff alleges that under the regulation and statute, and by the terms of the loan commitment, promissory notes, and deed of trust, the FmHA has in effect "promised to provide plaintiff technical assistance including inspection and supervision of the construction of plaintiff's new home and to insure [sic] that the provisions of the contract were fulfilled." (Amended complaint, ¶ 30)

A thorough review of the cited documents reveals no such express promises. The issues raised by plaintiff's claim are therefore (1) whether the statute and regulations are incorporated within those documents, and (2) if so, whether they create on the part of the FmHA a duty *to plaintiff* to supervise the construction of the structure.

Plaintiff relies on regulations promulgated by the Secretary providing that the County Supervisor (the relevant FmHA representative) must inform the borrower and the payee that loan money will be released only if "the quality and quantity of items purchased are in accordance with approved plans" (7 CFR § 1803.7(d)(3)(i)), and

that the amount due the builder will be paid only if the work is in compliance "with all items and conditions of the contract" (7 CFR § 1804.4(d)(7)(vii)(a)). Plaintiff argues that the provision of 7 CFR § 1822.7(a) together with 7 CFR § 1822.2 also create a duty *to plaintiff* to supervise the building of her structure, for the breach of which the FmHA is liable.

We cannot agree. 7 CFR § 1822.7(a) provides:

Supervision will be provided borrowers to the extent necessary to achieve the objectives of the loan *and to protect the interests of the Government* . . . . (Emphasis added)

The basic objectives of the FmHA program are enunciated in 7 CFR § 1822.2:

The basic objective of the Farmers Home Administration (FmHA) in making Section 502 loans is to assist farmowners and other persons who will live in rural areas to obtain decent, safe, and sanitary dwellings and related facilities. The purpose of the loan is to give families, who do not have sufficient resources to provide such dwellings and related facilities on their own account and cannot obtain the necessary credit from other sources on terms and conditions they can reasonably expect to meet, *an opportunity* to have adequate homes. (Emphasis added.)

It is clear that in making these loans available to low-income rural inhabitants, the government sought only to provide them with an *opportunity* to obtain decent housing not otherwise open to them in the private sector. The government did not intend to make itself an insurer of the quality of the workmanship or structures funded with the loan proceeds.

As a condition of making a loan, the FmHA must perfect a security interest in the dwelling built or purchased, 7 CFR § 1822.10, and the amount of the loan is limited by the market value of that security. 7 CFR § 1822.7(3). Thus, the FmHA assumes the position of a mortgagee of the property. It follows that the government would have a strong interest in ensuring

that the value of its security would remain adequate to cover the balance of the loan in the event of default by the borrower, especially in view of the risks inherent in the program. The supervision of the building process mandated by the regulations serves this function, and, as the government argues, any benefit to the borrower is purely incidental. In fact, the regulation calling for final inspection by the County Supervisor provides that he should be "accompanied by the borrower when practicable." 7 CFR § 1804.4(g)(1).

To hold the FmHA liable for the shoddy work of the contractor would be tantamount to making a mortgagee the warrantor of the quality of its security. Plaintiff has cited no authority for this proposition, nor have we found any.

The Court holds that even if the regulations are incorporated into the loan obligation agreement between plaintiff and FmHA, they create no duty running from FmHA *to plaintiff* to warrant the quality of the structure purchased with the loan proceeds. See *Ramsey v. Farmers Home Administration*, 443 F.Supp. 760 (E.D.Mo. 1978). Accordingly, plaintiff's first cause of action must be dismissed as against the government.

### (2) *Negligence*

■ Plaintiff's second claim based on negligence is likewise premised on the duties imposed on FmHA by the regulations. Plaintiff claims that FmHA and its employees breached their duty to supervise and inspect the building of plaintiff's dwelling. We have already held that the regulations create no duty running to plaintiff. Therefore, there can be no actionable breach of such duty. Accordingly, plaintiff has here, too, failed to state a claim as against the government defendants.

### (3) *Detrimental reliance*

■ Plaintiff's third claim styled "detrimental reliance" must also fail. Plaintiff says that "during the course of the entire transaction" defendant employees of the FmHA "promised to perform their regula-

tory duties" to supervise construction and "to oversee the relationship between the contractor and the plaintiff," and that these promises induced her to *enter into* the contracts with Home Marketing and the FmHA (Amended Complaint, ¶¶ 36, 37, 39.)

In order to state a claim, plaintiff must allege that the promises actually *induced* her to take "action . . . of a definite and substantial character." Rest.2d Contracts, § 90. The action induced was *entering into* the contracts with Home Marketing and FmHA. It appears from the face of the complaint, however, (at ¶ 36) that the alleged promises were made only "during the course of the . . . transaction." Thus, the promises complained of, having apparently been made only *after* plaintiff entered into the contracts, could not have induced her to act.

In any event, in view of our interpretation of the regulations, and those of other courts (see, *e. g., Adamsville Lumber Co., Inc. v. Rainey*, 348 F.Supp. 373, 377 (W.D. Tenn.1972); *Ramsey v. Farmers Home Administration*, 433 F.Supp. 760 (E.D.Mo. 1978)), a promise by employees of FmHA "to perform their regulatory duties" (Amended Complaint, ¶ 36) could not reasonably have been expected to induce plaintiff to enter into the said contracts. Rest.2d, Contracts ¶ 90.

### (4) *Mandamus*

■ In her amended complaint, plaintiff has added a cause of action seeking mandamus compelling the Secretary to "pay or otherwise compensate" her for construction defects in her dwelling. The Secretary's alleged duty in this regard is premised on 42 U.S.C. § 1479(c), and regulations promulgated thereunder, 7 CFR § 1924.251 *et seq.*, which authorize payment by the Secretary to the owner for defective construction.

The claim must fail for three reasons. First 7 CFR § 1924.251 states:

Provisions of this subpart do not apply to dwellings financed through the guaranteed Section 502 program.

Our research has revealed no reason to believe that the loan in question does not fall within this exemption.

Secondly, § 1924.252 states, in part:

> If a complaint is justified and covered by the provisions of the builder's warranty, the *builder* is expected to make the necessary corrections. (Emphasis added.)

Since the alleged defects appear to be covered by the builder's warranty, they are his responsibility, not that of the FmHA. In any event, the section continues:

> [T]he cost for repairing structural defects, in newly constructed dwellings not corrected by the builder *may* be paid by the government, or the borrower *may* be compensated for repairing such defects under the provisions of this subpart. (Emphasis added.)

It is clear from the wording of the regulation that compensation lies wholly within the discretion of the Secretary or his designee. As such there is simply no basis on which this Court can order payment.

Finally, a reading of the regulation reveals that its purpose is to authorize either direct payment for repair of the defects or *reimbursement* to the owner for expenditures she has made. There is no allegation in the complaint that plaintiff has expended any of her own money in an effort to repair the alleged defects. To order payment of compensation without such prior payment would be tantamount to ordering the FmHA to pay damages to plaintiff, the basis for which this Court has already held in this opinion to be non-existent. Plaintiff cannot get indirectly that to which she is not entitled directly.

For the above reasons, this Court is of the opinion that plaintiff has failed to state facts upon which relief from the government defendants can be based. As pointed out above, we express no opinion with regard to her claims against Home Marketing and the other private defendants. It shall accordingly be ordered that the government be dismissed from this case. Since such action destroys this Court's jurisdiction based on 28 U.S.C. § 1346(b), and no other bases of jurisdiction have been alleged at to the remaining defendants, it shall also be ordered that the case be remanded to the Circuit Court of Roane County, where it was originally brought.

But we feel we must make two final observations. Fed.R.Civ.P. 8(a) prescribes the general requirements for a complaint filed in federal court. Paramount among these is that the complaint contain "a *short and plain* statement of the claim . . . ." With some exceptions, the purpose of the pleading is to apprise the opposition of the facts giving rise to the complaint and to put him on notice of the nature of the action against which he must defend. The complaint is *not* the proper place for legal argument. Yet in the instant case, the 19-page pleading is virtually packed with statutory and regulatory citations, and portions of no less than six such provisions are set out verbatim—some virtually in their entirety. While we respect the thoroughness of counsel's research, we are constrained to add that the inclusion of such minute detail in the initial pleading renders its review tedious and confusing. A short and plain statement of the claim is all that is needed.

Secondly, in his brief responding to the government's motion to dismiss, plaintiff cited several unreported decisions of the courts. Local Rule 11(b) provides, "Authorities not readily available to the Court . . . shall be supplied to the Court either in the original, or in legible, duplicate form." This was not done in this case, and the Court was forced to specifically request counsel to provide those opinions. This requires unnecessary delay, and we strongly urge that it not happen again. Fortunately, in the interests of plaintiff, the Court was able to put off its final decision until those opinions were supplied, but counsel should be assured that this Court has no intention of making such delay a commonplace practice.

Order Accordingly.