# BLOCK, SECRETARY OF AGRICULTURE, ET AL.
## v. NEAL

No. 81–1494.   Argued January 19, 1983—Decided March 7, 1983

MARSHALL, J., delivered the opinion of the Court, in which BRENNAN, WHITE, BLACKMUN, POWELL, REHNQUIST, STEVENS, and O'CONNOR, JJ., joined. BURGER, C. J., concurred in the judgment.

*Carter G. Phillips* argued the cause for petitioners. With him on the briefs were *Solicitor General Lee, Assistant Attorney General McGrath, Deputy Solicitor General Geller, Anthony J. Steinmeyer,* and *Margaret E. Clark.*

*Lenny L. Croce* argued the cause for respondent. With him on the brief were *Neil G. McBride* and *Dean Hill Rivkin.**

JUSTICE MARSHALL delivered the opinion of the Court.

The Secretary of Agriculture is authorized by Title V of the Housing Act of 1949, 63 Stat. 432, as amended, 42 U. S. C. § 1471 *et seq.* (1976 ed., and Supp. V), to extend financial and technical assistance through the Farmers Home Administation (FmHA) to low-income rural residents who seek to obtain housing. Respondent Onilea Neal, the recipient of an FmHA loan for the construction of a prefabricated house, brought this action under the Federal Tort Claims Act, 28 U. S. C. §§ 1346(b), 2671–2680. She alleged that defects discovered after she set up residence were partly attributable to the failure of FmHA employees properly to inspect and supervise construction of her house. This case presents the question whether respondent's action is barred by 28 U. S. C. § 2680(h), which precludes recovery under the Tort Claims Act for "[a]ny claim arising out of . . . misrepresentation."

## I

### A

The facts described in respondent's complaint may be summarized as follows. Unable to obtain credit from other

---

*\*David M. Madway* filed a brief for the National Housing Law Project as *amicus curiae* urging affirmance.

*Jan Perkins* filed a brief for Oregon Legal Services Corp. as *amicus curiae.*

sources, Neal applied for a Rural Housing Loan from FmHA pursuant to § 502(a) of the Housing Act of 1949, 42 U. S. C. § 1472(a). FmHA approved her application in June 1977. During the summer of that year, Neal received advice from S. Lain Parkison, the FmHA Supervisor for Roane County, Tenn.

On August 8, 1977, Neal contracted with Home Marketing Associates, Inc. (Home Marketing), for the construction of a prefabricated house.[1] The contract required that Home Marketing's work conform to plans approved by FmHA. It also granted FmHA the right to inspect and test all materials and workmanship and reject any that were defective. At the same time, Neal entered into a deed of trust with FmHA and signed a promissory note providing for repayment of the principal sum of $21,170, plus interest of 8% per annum on the unpaid principal.

---

[1] Regulations then in effect allowed the recipient of an FmHA loan under § 502 of the Housing Act of 1949, 42 U. S. C. § 1472, to obtain new housing in one of three ways. The method undertaken by respondent, known as the "contract method" of financing new construction, involved the performance of work by a builder in accordance with a signed contract approved by FmHA. See 7 CFR § 1804.4(d) (1977). Although the FmHA "will not become a party to a construction contract nor incur any liability thereunder," *ibid.*, its officials were significantly involved in all phases of the construction of respondent's house. For example, the FmHA County Supervisor was authorized to assist the borrower in selecting a contractor based on the bids or proposals and the contractor's qualifications. § 1804.4(d)(6). He reviewed all plans and specifications, § 1804.4(a), and was required to give prior approval of any changes in the plans, § 1804.4(d), or in the contract. § 1804.4(d)(8). He was responsible for making periodic and final inspections. § 1804.4(d)(6)(i)(*j*). See also §§ 1803.2, 1803.5, 1804.4(g). He also had a responsibility to see that partial payments made to the contractor were properly applied against his bills for material and labor, § 1804.4(d)(7)(iv), and to determine that work was performed in compliance with all the terms and conditions of the contract before making final payment. § 1804.4(d)(7)(vii). Finally, he assisted the borrower with respect to claims arising under the builder's warranty. § 1804.4(g)(5).

Home Marketing commenced work on Neal's house in August 1977 and finished the following month. An FmHA official, Mary Wells, inspected the site on three occasions: soon after construction began, shortly before it was concluded, and after the house was completed. Her inspection reports contained no adverse comments on the construction work. After her third inspection, Wells issued a final report, signed by Neal, which indicated that the construction accorded with the drawings and specifications approved by FmHA. Home Marketing issued a one-year builder's warranty covering workmanship, materials, and equipment.

Neal moved into the house in 1977. During the winter, she discovered that the heat pump in the house was not working properly. She notified FmHA and Home Marketing. An inspection by Parkison, the County FmHA Supervisor, revealed that the heat pump unit was either defective or undersized. On March 22, 1978, FmHA's State Director and other FmHA officials conducted a complete inspection and identified 13 additional defects in the construction of the house. These included deviations from plans approved by FmHA and from applicable Minimum Property Standards. The inadequacies in materials and workmanship included defects in caulking, bridging, sealing, and plumbing, and extended to all areas of the house, such as the porch, the rear door, the floor, the roof, the exterior paint, and the interior wall finish. Home Marketing refused to comply with FmHA's request to cure these defects in accordance with the builder's warranty.

In November 1978 respondent asked FmHA to pay for the correction of the heating system and other structural defects. It declined to do so.

B

The United States District Court for the Eastern District of Tennessee dismissed Neal's complaint for failure to state a claim on which relief can be granted. *Neal* v. *Bergland*, 489 F. Supp. 512 (1980). It found that no contractual duty to su-

pervise the construction of respondent's home was created either by the Federal Housing Act of 1949 and the regulations promulgated thereunder or by the various agreements between respondent and FmHA. The court concluded that regulations requiring FmHA officials to ensure that the builder adhere to the terms of its construction contract were intended solely to protect the Government's security interest, and were not intended to make FmHA warrant the quality of construction for the benefit of those receiving rural assistance loans. *Id.*, at 514–515. The District Court also concluded that respondent failed to state a claim against FmHA under applicable tort law. *Id.*, at 515.

The Court of Appeals reversed. *Neal* v. *Bergland,* 646 F. 2d 1178 (CA6 1981). It agreed with the District Court that FmHA had no contractual obligation to provide Neal with technical assistance or to inspect and supervise construction of her house. *Id.*, at 1181. However, the Court of Appeals found that respondent's complaint stated a claim for negligence under the principle "that one who undertakes to act, even though gratuitously, is required to act carefully and with the exercise of due care and will be liable for injuries proximately caused by failure to use such care." *Id.*, at 1181–1182, citing Restatement (Second) of Torts § 323 (1965). It noted that, subject to express exceptions, the Tort Claims Act, 28 U. S. C. § 2674, authorizes suit against the Government for the negligence of a federal agency in performing a voluntary undertaking. *Ibid.*[2]

The Court of Appeals then considered the question now before us: whether respondent's claim "aris[es] out of . . . misrepresentation," 28 U. S. C. § 2680(h), and is therefore ex-

---

[2] The court cited, *inter alia, Indian Towing Co.* v. *United States,* 350 U. S. 61 (1955) (Coast Guard's failure to maintain the beacon light in a lighthouse); *Seaboard Coast Line R. Co.* v. *United States,* 473 F. 2d 714 (CA5 1973) (negligent design and construction of a drainage ditch); and *Barron* v. *United States,* 473 F. Supp. 1077 (Haw. 1979) (failure to require a subcontractor to comply with a contract's safety requirements).

cluded from coverage by the Tort Claims Act. Distinguishing this case from others including *United States* v. *Neustadt*, 366 U. S. 696 (1961), the court concluded that respondent's negligence claim did not fall within this exception to the waiver of sovereign immunity. The Secretary of Agriculture and other Government officials petitioned for certiorari and suggested summary reversal on the ground that the decision below cannot be reconciled with this Court's decision in *Neustadt*. We granted the writ, 456 U. S. 988 (1982), and we now affirm.

II

The question before us is a narrow one. Petitioners argue only that respondent's claim is a claim of "misrepresentation" within the meaning of § 2680(h). They do not seek review of the threshold determination that respondent's complaint states a claim for negligence under the Good Samaritan doctrine that is otherwise actionable under 28 U. S. C. § 2674. Thus, we need not decide precisely what Neal must prove in order to prevail on her negligence claim, nor even whether such a claim lies.[3] Nor are we called on to consider whether recovery is barred by any other provision of the Tort Claims Act, including the exception for any action "based upon the exercise or performance or the failure to exercise or perform a discretionary function." § 2680(a). Finally, we are not asked to determine whether the administrative remedy created by the Housing Act of 1949, 42 U. S. C. § 1479(c) (1976

---

[3] The Court of Appeals found that respondent stated a claim against the United States under the common-law Good Samaritan doctrine which is described in § 323 of the Restatement (Second) of Torts (1965). However, the court did not expressly find that Tennessee law recognizes this doctrine, see 28 U. S. C. § 1346(b), and would apply it to a private person responsible for similar negligence. See 28 U. S. C. § 2674; *Rayonier, Inc.* v. *United States*, 352 U. S. 315, 319 (1957); *Indian Towing Co.* v. *United States, supra*. Nor did the court describe in any significant detail what respondent must show in order to prevail on her negligence claim.

ed., Supp. V), provides the exclusive remedy against the Government for damages attributable to the negligence of FmHA officials.[4]

The scope of the "misrepresentation" exception to the Tort Claims Act was the focus of this Court's decision in *United States* v. *Neustadt, supra.* Neustadt purchased a house in reliance on an appraisal undertaken by the Federal Housing Administration (FHA) for mortgage insurance purposes. After he took up residence, cracks appeared in the ceilings and walls of his house. The cracks were caused by structural defects that had not been noticed by the FHA appraiser during the course of his inspection. Neustadt sued the Government under the Tort Claims Act to recover the difference between the fair market value of the property and the purchase price. He alleged that the FHA had negligently inspected and appraised the property, and that he had justifiably relied on the appraisal in paying a higher price for the house than he would otherwise have paid.

This Court held that the claim in *Neustadt* arose out of "misrepresentation" under §2680(h). We determined initially that §2680(h) applies to claims arising out of negligent, as well as intentional, misrepresentation. 366 U. S., at

---

[4] Compare, *e. g., Johansen* v. *United States,* 343 U. S. 427 (1952) (Federal Employees' Compensation Act provides exclusive remedy for civilian employees), with *United States* v. *Muniz,* 374 U. S. 150, 160 (1963) (provision allowing compensation of certain prison inmates for work-related injuries was not exclusive remedy for inmate), and *United States* v. *Brown,* 348 U. S. 110, 111 (1954) (receipt of disability payments under the Veterans Act does not bar recovery under the Tort Claims Act).

Petitioners do argue at length, however, that neither the Housing Act of 1949 nor subsequent amendments were intended to expand liability beyond that established under the Tort Claims Act. Brief for Petitioners 22–32. Because we find that respondent's claim under the Good Samaritan doctrine is not barred by the "misrepresentation" exception to the Tort Claims Act, we do not consider whether the Housing Act provides an alternative basis for respondent's claim.

703–706. This Court found that Neustadt's claim that the Government had breached its "duty to use due care in obtaining and communicating information upon which [the plaintiff] may reasonably be expected to rely in the conduct of his economic affairs," merely restated the traditional legal definition of "negligent misrepresentation" as would have been understood by Congress when the Tort Claims Act was enacted. *Id.*, at 706–707.[5] Finally, we examined the National Housing Act of 1934, as amended, under which the FHA had conducted its appraisal, and found nothing to indicate "that Congress intended, in a case such as this, to limit or suspend the application of the 'misrepresentation' exception of the Tort Claims Act." *Id.*, at 708–710.

We cannot agree with petitioners that this case is controlled by *Neustadt.* As we recognized in that decision, the essence of an action for misrepresentation, whether negligent or intentional, is the communication of misinformation on which the recipient relies. The gravamen of the action against the Government in *Neustadt* was that the plaintiff was misled by a "Statement of FHA Appraisal" prepared by the Government. Neustadt alleged no injury that he would have suffered independently of his reliance on the erroneous appraisal. Because the alleged conduct that was the basis of

---

[5] The Court distinguished negligent misrepresentation from the "many familiar forms of negligent misconduct [which] may be said to involve an element of 'misrepresentation,' [only] in the generic sense of that word." 366 U. S., at 711, n. 26. The "misrepresentation" exception applies only when the action itself falls within the commonly understood definition of a misrepresentation claim, which "'has been identified with the common law action of deceit,' and has been confined 'very largely to the invasion of interests of a financial or commercial character, in the course of business dealings.'" *Ibid.*, quoting W. Prosser, Law of Torts § 85, pp. 702–703 (1941 ed.). Thus, the claim in *Indian Towing Co.* v. *United States*, 350 U. S. 61 (1955), for damages to a vessel which ran aground due to the Coast Guard's alleged negligence in maintaining a lighthouse, did not "aris[e] out of . . . misrepresentation" within the meaning of § 2680(h).

his negligence claim was in essence a negligent misrepresentation, Neustadt's action was barred under the "misrepresentation" exception.

Section 2680(h) thus relieves the Government of tort liability for pecuniary injuries which are wholly attributable to reliance on the Government's negligent misstatements. As a result, the statutory exception undoubtedly preserves sovereign immunity with respect to a broad range of Government actions.[6] But it does not bar negligence actions which focus not on the Government's failure to use due care in communicating information, but rather on the Government's breach of a different duty.

In this case, unlike *Neustadt*, the Government's misstatements are not essential to plaintiff's negligence claim. The Court of Appeals found that to prevail under the Good Samaritan doctrine, Neal must show that FmHA officials voluntarily undertook to supervise construction of her house; that the officials failed to use due care in carrying out their supervisory activity; and that she suffered some pecuniary injury proximately caused by FmHA's failure to use due care.[7] FmHA's duty to use due care to ensure that the builder adhere to previously approved plans and cure all defects before completing construction is distinct from any duty to use due care in communicating information to respondent. And it certainly does not "appea[r] beyond doubt" that the only damages alleged in the complaint to be caused by FmHA's conduct were those attributable to Neal's reliance on FmHA inspection reports. *Conley* v. *Gibson*, 355 U. S. 41, 45–46 (1957). Neal's factual allegations would be consistent with proof at trial that Home Marketing would never have turned

---

[6] See Restatement (Second) of Torts § 552(3) (1977).

[7] Although this negligence claim may include an element of reliance on FmHA's voluntary undertaking to supervise construction in a competent manner, this element of the claim would constitute "misrepresentation" only in the generic sense of the word. See n. 5, *supra.*

the house over to Neal in its defective condition if FmHA officials had pointed out defects to the builder while construction was still underway, rejected defective materials and workmanship, or withheld final payment until the builder corrected all defects.

Of course, in the absence of the "misrepresentation" exception to the Tort Claims Act, respondent could also have brought a claim for negligent misrepresentation to recover for any injury caused by her misplaced reliance on advice provided by FmHA officials and on the FmHA inspection reports. Common to both the misrepresentation and the negligence claim would be certain factual and legal questions, such as whether FmHA officials used due care in inspecting Neal's home while it was under construction. But the partial overlap between these two tort actions does not support the conclusion that if one is excepted under the Tort Claims Act, the other must be as well. Neither the language nor history of the Act suggests that when one aspect of the Government's conduct is not actionable under the "misrepresentation" exception, a claimant is barred from pursuing a distinct claim arising out of other aspects of the Government's conduct. "'The exemption of the sovereign from suit involves hardship enough where consent has been withheld. We are not to add to its rigor by refinement of construction where consent has been announced.'" *United States* v. *Aetna Surety Co.,* 338 U. S. 366, 383 (1949), quoting *Anderson* v. *Hayes Constr. Co.,* 243 N. Y. 140, 147, 153 N. E. 28, 29–30 (1926) (Cardozo, J.). Any other interpretation would encourage the Government to shield itself completely from tort liability by adding misrepresentations to whatever otherwise actionable torts it commits.

We therefore hold that respondent's claim against the Government for negligence by FmHA officials in supervising construction of her house does not "aris[e] out of . . . misrepresentation" within the meaning of 28 U. S. C. § 2680(h). The Court of Appeals properly concluded that Neal's claim is

not barred by this provision of the Tort Claims Act because Neal does not seek to recover on the basis of misstatements made by FmHA officials. Although FmHA in this case may have undertaken both to supervise construction of Neal's house and to provide Neal information regarding the progress of construction, Neal's action is based solely on the former conduct. Accordingly, the judgment of the Court of Appeals is

*Affirmed.*

THE CHIEF JUSTICE concurs in the judgment.