NATIONAL CARRIERS,
INCORPORATED,
Appellant,

v.

UNITED STATES of America, Appellee.

No. 84–1617.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 12, 1984.

Decided Feb. 26, 1985.

As Modified on Denial of Rehearing
June 4, 1985.

John R. Phillips, Kansas City, Mo., for appellant.

Christopher D. Hagen, Des Moines, Iowa, for appellee.

Before LAY, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BRIGHT, Circuit Judge.

BRIGHT, Circuit Judge.

National Carriers, Inc. (National) appeals from an adverse judgment in its claim against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671–80 (1982). National brought this action alleging that the negligence of a government meat inspector caused the contamination of more than 200 quarters of National's beef. The trial court[1] ruled that the inspector's acts came within the misrepresentation exception to the FTCA, 28 U.S.C. § 2680(h) (1982), and thus did not expose the Government to tort liability. For reversal, National argues that the in-

---

1. The Honorable R.E. Longstaff, United States Magistrate for the Southern District of Iowa, presiding, at the consent of the parties, pursuant to 28 U.S.C. § 636(c)(1) (1982).

spector committed other negligent acts, separable from any misrepresentation, which are actionable under the FTCA. We reverse and remand for a determination of damages and entry of judgment for National.

## I. BACKGROUND.

On the morning of August 28, 1979, a tractor-trailer type truck owned by National, carrying 236 quarters of hanging beef, overturned on U.S. Highway 61 near Wapello, Iowa. The trailer came to rest at the bottom of a ditch, with its left side partially submerged in muddy water. National immediately flew an experienced salvage crew (known in the industry as "luggers") to the scene of the accident and procured a second trailer so the beef could be transferred from the overturned vehicle and taken to its intended destination.

Sometime after the accident, Kenneth R. Noble, a meat inspector employed by the United States Department of Agriculture, arrived at the scene. The rear doors of the trailer were then opened and those present observed sixteen to twenty beef quarters lying in ditch water. Noble, the luggers, and Melvin Davis, an insurance adjuster, agreed to separate the beef that had been exposed to ditch water from the rest of the beef by hanging it in a separate area of the transfer trailer, separated from the unexposed beef by plastic sheets hung between the two areas. Noble also agreed to identify each quarter that had been exposed to ditch water.

The luggers purchased some plastic sheeting from a nearby lumberyard and began moving beef to the transfer trailer. The work proceeded as planned until one-third to one-half of the beef had been moved. Noble then told the luggers that they could stop separating the exposed and unexposed beef. In response to the lugger foreman's inquiry, Noble stated that the quarters were "all the same." The foreman asked if Noble would tag the exposed quarters, and Noble responded that he had not brought any tags with him. The luggers completed the transfer, commingling the exposed and unexposed beef.

The entire truckload of beef was ultimately condemned by USDA inspectors other than Noble because of the possibility that exposed beef had come in contact with unexposed beef and contaminated it. National sold the beef for dog food and sustained a substantial loss.

National sued the Government to recover its loss. Upon conclusion of the trial, the magistrate determined that National's loss resulted directly from inspector Noble's statement to the salvage crew that the exposed and unexposed beef did not have to be separated. He concluded that the statement constituted a "misrepresentation" and thus fell within an exception to the FTCA, codified at 28 U.S.C. § 2680(h):

> **Exceptions**
>
> The provisions of this chapter and section ⁻1346(b) of this title shall not apply to—
>
>    *      *      *      *      *      *
>
> Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights * *.

The magistrate entered judgment for the United States and National brought this appeal.

## II. DISCUSSION.

National contends that its claim against the Government was not based solely on inspector Noble's misrepresentation. In addition to the misrepresentation, National argues that Noble acted negligently by failing to condemn the exposed beef quarters or tag them for future identification. Accordingly, National argues that the misrepresentation exception does not bar its entire claim.

National's argument is supported by the recent Supreme Court case of *Block v. Neal*, 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983). In *Block*, the Court recognized that a claim based on negligence may have elements in common with a misrepresentation claim. However, the

fact that there are common elements does not cause the misrepresentation exception to bar the entire claim. The Court stated:

> Common to both the misrepresentation and the negligence claim would be certain factual and legal questions * * *. But the partial overlap between these two tort actions does not support the conclusion that if one is excepted under the Tort Claims Act, the other must be as well. Neither the language nor history of the Act suggest that when one aspect of the Government's conduct is not actionable under the "misrepresentation" exception, a claimant is barred from pursuing a distinct claim arising out of other aspects of the Government's conduct.

460 U.S. at 298, 103 S.Ct. at 1094.

We are satisfied that the magistrate's findings of fact in this case compel a determination that Noble acted negligently, in a manner distinct from his misrepresentations. The magistrate found:

> 10. Mr. Noble, Mr. Davis, and the luggers at first agreed to wrap each quarter which had touched the water individually. Later, the parties agreed to separate the quarters which had touched the water by the use of plastic sheets hung between the exposed and the non-exposed quarters. At this time, Mr. Noble agreed to identify the water-exposed quarters for special treatment at the point of destination.

>     *     *     *     *     *     *

> 14. After the transfer was about ⅓ to ½ completed, and only three to four exposed quarters were left in the overturned trailer, Mr. Noble told the luggers they could stop segregating the quarters. The lugger crew foreman, Bruce Hines, asked why and was told that the quarters were "all the same." Mr. Hines also asked Mr. Noble if he was going to tag the exposed quarters and Mr. Noble responded that he had not brought any tags with him. At this point, the luggers complied with Mr. Noble's instructions

and finished loading the quarters; commingling the wet with the dry.

>     *     *     *     *     *     *

> 17. Mr. Davis and the luggers believed that if a UADA [sic] official was on the scene of the accident, he was in charge.

> 18. When the load was sealed with a retaining seal by Mr. Noble, the wet quarters were commingled with the dry quarters and the wet ones contacted and contaminated the dry ones.

>     *     *     *     *     *     *

> 22. Mr. Noble had the authority to condemn the meat exposed to the ditch water at the accident site on August 28, 1979.

> 23. Mr. Kenneth Noble was responsible for the failure to continue separation of the exposed and non-exposed quarters until the transfer trailer was completely loaded.

The first findings establish a duty to identify and separate the exposed beef at the accident site and negligence in the performance of that duty; finding number 23 establishes that this negligence was a cause of National's injury.

■ The district court erred in dismissing all of National's claims on the basis of the misrepresentation exception. Furthermore, the findings made by the trial court compel the conclusion that National is entitled to judgment on its negligence claim. Accordingly, we reverse the decision of the magistrate and remand this case for entry of an appropriate judgment for damages. Because no findings have been made relating to National's damages, the magistrate is instructed to determine the amount of those damages attributable to inspector Noble's negligence and enter judgment for National for that amount.

■ The Government, as an additional defense, contends that National's negligence claim is barred by the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a) (1982). Although the trial court did not reach this issue, we recently addressed this exception in *McMichael v.*

*United States,* 751 F.2d 303 (8th Cir.1985), where we distinguished between discretionary judgments concerning agency policy and non-discretionary responsibilities to carry out federal regulations. In this case, Noble was required to suggest separation of the exposed beef to permit the agency to follow federal regulations to condemn or tag the contaminated beef, and his failure to do so cannot be considered a protected discretionary act. Under *McMichael,* the Government's argument regarding the discretionary function exception is without merit, and we hold that the magistrate need not consider it on remand.

Accordingly, we reverse and remand for determination of damages only and for the entry of judgment for National.