**James D. LUCKINBILL and Helen Luckinbill, his wife, Plaintiffs,**

**v.**

**UNITED STATES of America, Acting Through the FARMERS HOME ADMINISTRATION; and Farmers Home Administration, Defendants.**

**Civ. A. No. 1:CV–89–61.**

United States District Court, M.D. Pennsylvania.

March 23, 1990.

Malcolm S. Mussina, Rieders Travis Mussina Humphrey & Harris, Williamsport, Pa., for plaintiffs.

James Gibbons, Asst. U.S. Atty., Scranton, Pa., for defendants.

## MEMORANDUM

RAMBO, District Judge.

This action was commenced pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346 and 2671–80. The court held a nonjury trial on February 22, 1990. The following consists of the court's findings of fact, discussion and conclusions of law.

*Findings of Fact*

The plaintiffs, husband and wife, own a farm in Lycoming County, Pennsylvania. In 1982, plaintiffs applied for a mortgage loan from Farmers Home Administration (FmHA) to refinance existing obligations and to construct a 40–stanchion cow barn. The contract price of the new barn was $49,964.50. The builders were Strouse &

Strouse Contractors. The construction on the barn began on or about July 16, 1982.

Patrick Hoxie was the FmHA representative supervising the construction loan. It was Hoxie's responsibility to visit the site and inspect the work when requests for payment were made by the builders. An inspection report had to be filed by Hoxie to support each payment.

Mr. Luckinbill was at the site on a daily basis. He monitored construction closely and made numerous complaints to both the builders and Hoxie about what he felt were deficiencies in the work. Joseph Campbell, an employee of plaintiffs, also complained about the poor workmanship. Although Hoxie does not remember specific complaints, he does remember receiving several complaints from both Mr. Luckinbill and the builders. After receiving complaints from the builders, Hoxie told Mr. Luckinbill to stay away from the site when the builders were there, to note any deficiencies after work hours, and to keep a list of deficiencies. Hoxie told Luckinbill that all deficiencies would be taken care of at a later time.

Mr. Luckinbill kept informing Hoxie of deficiencies in the construction. Hoxie, however, ignored Luckinbill's complaints and the deficiencies. When requests for payment were made, Hoxie went to the site and filled out his inspection reports but failed to note any deficiencies on the forms.

Hoxie authorized payment to the builders from the plaintiffs' loan account despite Mr. Luckinbill's complaints. When Mr. Luckinbill expressed concern about the builders receiving more money than Luckinbill thought was warranted in light of the amount of work completed and the deficiencies noted, Hoxie instructed him that he had to co-sign the checks. Hoxie knew the builders did not have a lot of cash reserves or financial acumen and that "times were rough" for them. He authorized payment because he thought the builders needed the money to buy supplies to continue working. Hoxie did not check to make sure the builders' suppliers were being paid.

Additionally, one time when payment was requested, Luckinbill expressed his desire to refuse payment and terminate the contract with the builders. Again, Hoxie told Luckinbill that all problems would be worked out. Hoxie also told Luckinbill that if he terminated the contract he would still have to pay the builders and would be stuck with finishing construction himself.

On October 18, 1982, when most of the money was expended from the loan account, Hoxie went to the site and called the builders and plaintiffs together. He told the builders that no more payments would be made and no other work should be done until all of the deficiencies were corrected. At that point, the builders loaded their tools and equipment, and left the site. In addition to the barn not being completed, defects in the barn have not been corrected. Defects in the barn include major fractures in the floor, settling of the floor by inches, pushing out of the rear and south walls, and use of improper sized block and studding and other defective and undergrade material. The barn is uninhabitable and the milk house will not pass inspection. The barn presently has a value of $3,500 because plaintiffs use it to store a truck.

*Discussion*

■ Plaintiffs contend that Hoxie undertook to supervise the construction and supervised negligently. Defendants argue that any acts undertaken by FmHA representatives were done for the benefit of FmHA and not plaintiffs. The parties agree that for the plaintiffs to prevail they must demonstrate that FmHA, through its agent, undertook to perform supervisory duties and then performed them negligently. *See Block v. Neal,* 460 U.S. 289, 298, 103 S.Ct. 1089, 1094, 75 L.Ed.2d 67 (1983); *Blessing v. United States,* 447 F.Supp. 1160, 1189 (E.D.Pa.1978).

There are certain provisions of the Code of Federal Regulations which are pertinent to this case. 7 C.F.R. § 1924.6(a)(12)(iv) (1980) provides:

(iv) The borrower and FmHA must take precautionary measures to see that all payments made to the contractor are properly applied against bills for materi-

als and labor procured under the contract. Prior to making any partial payment on any contract where a surety bond is not used, the contractor will be required to furnish the borrower and the FmHA with a statement showing the total amount owed to date for materials and labor procured under the contract. The contractor also may be required to submit evidence showing that previous partial payments were applied properly. When the borrower and the County Supervisor or District Director have reason to believe that partial payments may not be applied properly, checks may be made jointly to the contractor and persons who furnished materials and labor in connection with the contract.

7 C.F.R. §§ 1924.9(b)(4) and (5) (1980) provide:

(4) Arrangements should be made to have the borrower join the County Supervisor or the District Director in making periodic inspections as often as necessary to provide a mutual understanding with regard to the progress and performance of the work.

(5) The borrower should make enough periodic visits to the site to be familiar with the progress and performance of the work, in order to protect the borrower's interest. If the borrower observes or otherwise becomes aware of any fault or defect in the work or nonconformance with the contract documents, the borrower should give prompt written notice thereof to the contractor with a copy to the County Supervisor or District Director responsible for servicing the type of loan or grant involved.

7 C.F.R. § 1924.9(c) (1980) provides:

(c) *Recording inspections and correction of deficiencies.* All periodic and final inspections made by the County Supervisor or District Director will be recorded on *Form FmHA 424–12* in accordance with the FMI for the form. The County Supervisor or District Director will be responsible for following up on the correction of deficiencies reported on *Form FmHA 424–12.* When an architect/engineer is providing services on a project, the District Director should noti-fy the architect/engineer immediately of any fault or defect observed in the work or of any nonconformance with the contract document. If the borrower or the contractor refuses to correct the deficiencies, the District Director will report the facts to the State Director who will determine the action to be taken. No inspection will be recorded as a final inspection until all deficiencies or nonconforming conditions have been corrected.

■ There is no question that plaintiffs complied with their responsibilities under § 1924.9(b)(5). But Hoxie failed to comply with § 1924.9(c). He failed to note or follow up on any deficiencies brought to his attention by Luckinbill during the construction. As stated in § 1924.9, "The borrower will be responsible for making inspections necessary to protect the borrower's interest. FmHA's inspections are not to assure the borrower that the house is built in accordance with the plans and specifications." 7 C.F.R. § 1924(a) (1980). However, in *Neal v. Bergland,* 646 F.2d 1178 (6th Cir.1981), *aff'd sub nom., Block v. Neal,* 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983), the court held that when FmHA voluntarily undertakes to inspect and supervise construction and fails to use due care, liability ensues.

*Conclusions of Law*

■ This court finds two sets of circumstances indicating that defendants' agent undertook supervision of the construction. First, although Mr. Luckinbill continually reported deficiencies to Hoxie, Hoxie ignored those reports and authorized all payments requested by the builders. When Hoxie overrode Mr. Luckinbill in that manner, Luckinbill effectively lost control of supervision of the project for his own benefit. Second, Hoxie's insistence that Luckinbill co-sign the check coupled with his refusal to consent to termination of the contract effectively put Hoxie in the role as supervisor of the project for both Luckinbill and the government.

■ Having found Hoxie did undertake to supervise the project for plaintiffs, the

court must determine if Hoxie supervised negligently. Based on the evidence presented, that determination is made easily. There is no doubt that he supervised negligently. The result of the project is appalling.

Neither party has been clear in presenting the appropriate measure of damages in this action. The government's position that plaintiffs can recover only the amount claimed administratively is tenuous in light of the testimony regarding the foreseeability of the extent of the damage the barn would sustain during the almost eight year period between the time the contract was finally terminated and the trial of this case. At the same time, plaintiffs have not been clear in showing their entitlement to the damages they claim. Therefore, the court will schedule a conference to hear argument on the issue of damages. Plaintiff's counsel should be prepared to state support for each category of damages claimed. Defendants' counsel should be prepared to offer a measure of damages as an alternative to its position that damages are limited to the amount listed in the administrative claim.

An appropriate order will be issued.