**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MIKULAS POPOVIC, M.D., Ph.D.,
Plaintiff-Appellant,

v.

No. 98-1432

UNITED STATES OF AMERICA; SUZANNE
W. HADLEY, Ph.D.,
Defendants-Appellees.

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, District Judge.
(CA-96-3106-PJM)

Argued: December 2, 1998

Decided: April 20, 1999

Before WILKINSON, Chief Judge, MURNAGHAN, Circuit Judge,
and HERLONG, United States District Judge for the
District of South Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Lars Howard Liebeler, THALER & LIEBELER, Wash-
ington, D.C., for Appellant. S. Hollis Fleischer, Assistant United
States Attorney, Baltimore, Maryland, for Appellees. **ON BRIEF:**
Paul S. Thaler, THALER & LIEBELER, Washington, D.C., for
Appellant. Lynne A. Battaglia, United States Attorney, Baltimore,
Maryland, for Appellees.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

We have before us an appeal from a former NIH scientist, Mikulas Popovic, raising a Federal Tort Claims Act claim against NIH for its failure to conclude its investigation of him in a timely manner and its subsequent decision not to rehire him after the investigation exonerated him. Because the district court viewed Popovic's claims as, in substance, claims of defamation -- a type of suit specifically excluded under the FTCA -- it dismissed his suit and did not grant him leave to amend his complaint. For his part, Popovic claims that his suit sounds in negligence and invasion of privacy, both of which are well recognized torts in Maryland, whose law applies here. Finding no error, we affirm.

I.

Popovic was employed by the National Institutes Of Health (NIH) between 1980 and 1989 as a scientist. He worked in the Laboratory for Tumor Cell Biology (LTCB). Principally, he worked with Dr. Robert Gallo, the chief of the LTCB, in an effort to find a cure for AIDS. Popovic and Gallo made a breakthrough discovery by finding a way to isolate the AIDS virus and by proving that it was a retrovirus. Moreover, the doctors succeeded in growing amounts of the virus sufficient to facilitate the development of a test for humans. The results of the research were then published in Science magazine by Popovic, Gallo and other doctors.

Based on his success at NIH, Popovic left the laboratory there in 1989 to head a laboratory at New Mexico State University, which received some funding from the National Cancer Institute. When that laboratory began to suffer difficulties in 1989, Popovic called Gallo in hopes of returning to his old position at NIH. Gallo was unable to bring Popovic back to NIH because of the government investigation that is the subject of the instant litigation.

2

The government investigation initiated its investigation of Popovic and Gallo after a reporter's November 1989 article in the <u>Chicago Tribune</u> that alleged that the doctors' discovery was not original, but a misappropriation of an identical discovery made years earlier by researchers at the Pasteur Institute in France. NIH then began reviewing the doctors' work and its investigative arm, the Office of Scientific Integrity (OSI) (and its successor the Office of Research Integrity (ORI)), later concluded that a formal investigation was necessary.

Here is where Popovic and the defendants sharply diverge. The investigation, which the defendants contend was undertaken reasonably, essentially began in October of 1990, when OSI notified Popovic that it would proceed with a formal investigation. Approximately eight months later, in June 1991, OSI sent a report to Popovic detailing its findings and requesting his response. Popovic did respond in September 1991, and disputed the allegations contained in the report. OSI then amended the report, and in March 1992 forwarded it to the Office of Scientific Integrity Review (OSIR), which reviews all final reports of investigations to assure that proposed findings or recommendations are sufficiently documented.

While that process was pending, ORI, which had by then succeeded OSI, prepared another report. It issued its final report on December 29, 1992. That final report contained ORI's conclusion that Popovic had behaved improperly and recommended sanctions. The report stated that Popovic had falsified certain data and methods in reporting the research in the 1984 article. Despite its findings, however, ORI did state that its report should not bar Popovic from gaining employment as a scientist.

In late January 1993, Popovic appealed ORI's conclusions to the Department of Appeals Board (DAB). Later in the year, the DAB held a <u>de novo</u> hearing. On November 3, 1993, the DAB exonerated Popovic, finding that ORI had not established its claims of wrongdoing by a preponderance of the evidence. NIH's investigation ended with that finding.

Popovic believed that the entire investigation was conducted because of ill will, and filed a complaint with NIH, as he is required to do under the FTCA. <u>See</u> 28 U.S.C. § 2675. When NIH did not

3

grant him relief, he filed the instant action. The district court dismissed the action, holding that Popovic's claims essentially were defamation claims. Popovic filed a timely appeal.

II.

The district court dismissed Popovic's claims of negligence and invasion of privacy, reasoning that in reality Popovic was claiming that he was defamed. We review de novo dismissals of complaints for failure to state a claim. See Flood v. New Hanover County, 125 F.3d 249, 251 (4th Cir. 1997). In reviewing the complaint, all of its allegations are assumed to be true and all reasonable inferences are drawn in favor of the Plaintiff. Id. Similarly, we also review de novo dismissals for lack of jurisdiction. See Williams v. United States, 50 F.3d 299, 304 (4th Cir. 1995).

The Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., provides individuals injured by the tortious acts of federal government employees with an avenue to seek compensation from the federal government where they otherwise would be barred by sovereign immunity. In fact, the federal government is "liable . . . in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or punitive damages." 28 U.S.C. § 2674 (1994).

However, the FTCA excludes from the waiver of sovereign immunity specific types of tort claims. Those claims generally are intentional torts and claims "arising out of" those torts. See 28 U.S.C. § 2680(h). Included on that list of torts for which the government has not waived its sovereign immunity are the defamation torts, libel and slander. See id. However, where an action is not excluded, courts determine the nature and extent of tort liability by applying the law of the state in which the cause of action arose. See 28 U.S.C. § 1346 (1994).

The question we must resolve is whether Popovic's claims of negligence (negligent investigation) and invasion of privacy (false light), torts which are not enumerated in the statute and are thus cognizable, see Block v. Neal, 460 U.S. 289, 298 (1983), in fact "arise out of" defamatory acts. If so, then Popovic's suit is barred. See United States

4

<u>v. Neustat</u>, 366 U.S. 696, 714 (1961) (barring claim of negligence because it "arose out of" the excluded tort of misrepresentation).

It is well settled that the form of the tort does not control; we must look to the substance of the conduct of which the plaintiff complains. <u>See Neustat</u>, 366 U.S. at 703 (1961); <u>Kugel v. United States</u>, 947 F.2d 1504, 1506-07 (D.C. Cir. 1991). Moreover, the "arising out of" language is construed rather broadly to avoid permitting plaintiffs to sue the United States under theories that are not cognizable. <u>See United States v. Shearer</u>, 473 U.S. at 55 (Opinion of Burger, J.).

With the applicable principles in mind, we conclude that the district court properly dismissed Popovic's negligence and invasion of privacy claims. Popovic claims that ORI's four-year investigation -- an investigation that its regulations require it to complete within 120 days[1] -- resulted in lost job opportunities with NIH and other institutions that fund research projects. He argues that his action does not sound in defamation, and indeed cannot sound in defamation because such actions are predicated upon the falsity of the information communicated to others, while the information leaked in his case -- <u>i.e.</u>, that he was being investigated -- was true. Thus, he argues, even if some of the elements of defamation are present, defamation is not the essence of his claim. He argues that Supreme Court precedent requires a holding in his favor.

The Supreme Court has held that where a cause of action permitted under the FTCA and one prohibited under the FTCA share some common elements, the action not prohibited may still go forward. <u>See Block v. Neal</u>, 460 U.S. 289, 298 (1983). In <u>Block</u>, the plaintiff purchased a home through the Farmers' Home Association (FHA). The FHA made some representations to the plaintiff through its inspection

_____

**1** The government disputes the contention that its own regulations require that it complete investigations within 120 days. However, the regulations state that formal investigations should be completed within 120 days. <u>See</u> 56 FED. REG. 27384, 27390 (1991). If the investigationcannot be completed within that period, ORI must submit to OSIR an interim report discussing the nature of the investigation and its progress. <u>See id.</u> There is no evidence on the record that ORI filed such a report with respect to Popovic's investigation within the 120-day period.

5

and report, which induced her to purchase the home. Id. at 292. However, the FHA arguably was negligent in its inspection of the home. Id. at 292-93. That voluntary inspection created a separate duty of care. See id. Had it exercised greater care, the flaws in the house that ultimately caused the plaintiff's injuries would have been discovered. The district court barred the plaintiff's suit, reasoning that the negligence claim really arose from FHA's misrepresentations. Misrepresentation is specifically excluded from the FTCA's waiver of immunity. See 28 U.S.C. § 2680(h).

The Court of Appeals reversed and the Supreme Court affirmed the Court of Appeals' decision. The Court reasoned that as long as the claim is not completely based on a set of facts that state a claim that the FTCA prohibits, the claim is cognizable. Id. at 296-97. As the plaintiff's negligence claim arose from a different duty (i.e., the duty to properly inspect the house, once that duty was voluntarily undertaken) than the misrepresentation (i.e., the duty to exercise care in communicating information) the negligence is cognizable under the FTCA. Id. at 298-99.

Popovic cannot fit within the Block rule. Unlike the plaintiff in Block, Popovic's claims essentially arise from defamatory acts. His Complaint belies any attempts to rely on government standards for conducting the investigation. For example, he claims that two theories that ORI posited before the DAB were "false, and ORI knew, or should have known, [they were] false at the time [they were] made." J.A. at 26. One of the headings of his initial Complaint is styled "[t]he Aftermath of OSI/ORI's Witch Hunt." J.A. at 31. The Complaint is rife with references to the falsity of, or baseless nature of, the charges. The dissemination of information relating to the charges through leaks to the media and the ALERT damaged his reputation as a scientist, which kept him from obtaining employment.

Moreover, Popovic's claims of negligence are also undermined because he appears to claim that HHS acted intentionally. He claims that OSI/ORI continually leaked information to media sources, and does not even allege that the information was negligently disseminated. He claims that OSI/ORI continued to pursue him after filing reports by raising new allegations at the DAB hearing. In more general allegations, he claims that OSI/ORI refused to consider any

6

exculpatory evidence and repeatedly denied him other due process rights. As a result, we cannot conclude that Popovic's claims sounded in negligence, but rather in defamation.**2**

The same reasoning holds true for the invasion of privacy claim. Popovic correctly asserts that Maryland recognizes a cause of action for invasion of privacy, specifically false light invasion of privacy. The elements, which are similar to those of defamation, are the following: (1) a publication (2) of false information; (3) putting the plaintiff in a false light; (4) in an objectionable manner. See Allen, 547 A.2d at 1108. There also is a cause of action for disclosure of private facts. See Holander v. Lubrow, 351 A.2d 421, 425 (Md. 1976) (stating that an action lies where one publicizes a matter that is of a type that "(a) [w]ould be highly offensive to a reasonable person, and (b) [i]s not of legitimate concern to the public.").

A cursory look at Popovic's Complaint reveals that his claim here must also fail. As stated above, the acts complained of were defamatory acts. Defamation is not actionable under the FTCA. See 28 U.S.C. § 2680(h). As the statute and Supreme Court precedent make clear, not only are torts such as defamation not actionable, but claims "arising from" those torts are not actionable. See § 2680(h); Neustat, 366 U.S. at 703. Since Popovic's claims rely on defamatory acts, his invasion of privacy claims at best arise out of the excluded tort of defamation. As a result, they are not cognizable either.

III.

Popovic also challenges the district court's dismissal of his refusal to hire claim because it found that no such public policy exists in Maryland. Popovic contends that the abusive discharge cause of action applies to refusal to hire claims as well. We disagree.

_____

**2** Moreover, his insistence that ORI doggedly pursued the investigation based on charges that were groundless from the beginning also sounds in malicious prosecution, which is another tort excluded under § 2680(h). See Allen v. Bethlehem Steel Corp., 547 A.2d 1105, 1109 (Md. App. 1988) (stating that an action for malicious prosecution lies when a party initiates or continues a prosecution against another that was brought without probable cause, but with malice on the prosecutor's part, and the prosecution terminated in the innocent party's favor).

7

Under Maryland law, an employer has abusively discharged an employee when the employer discharges the employee in violation of some clearly articulated public policy and there is a nexus between the particular defendant and the decision to discharge the employee. See Bagwell v. Peninsula Medical Ctr., 665 A.2d 297, 309 (Md. App. 1995), cert. denied, 669 A.2d 1360 (Md. 1996). The public policy of the state of Maryland is not limited to "legislative enactments, prior judicial decisions or administrative regulations." Adler v. American Standard Corp., 432 A.2d 464, 472 (Md. 1981). However, where that public policy is "otherwise undeclared," Maryland courts are far more hesitant to decide the case on that basis. Id.

Such hesitancy is proper here. Popovic asserts that his case is like that of the plaintiff in O'Leary v. Shipley, 545 A.2d 17, 25 (Md. 1988). There, the plaintiff, a deputy clerk of the court, brought an abusive discharge claim because the clerk chose not to rehire her after she opposed him in that November's election. Id. at 18. Following the instruction that the appropriate test was whether the plaintiff was discharged for reasons solely related to one's political affiliation, the jury found for the defendant after he introduced evidence that he had other problems with O'Leary. Id.

However, the Maryland Court of Appeals vacated the judgment, concluding that the wrong test was applied. It concluded that O'Leary's claim in fact was that she was not rehired because of her clear expression of her rights under the First Amendment. As a result, it remanded the case.

Popovic's case is immediately distinguishable from O'Leary in important respects. First, the clerk's refusal to reappoint O'Leary to her position immediately after the election effectively operated as a discharge since O'Leary held the job prior to the election. By contrast, Popovic voluntarily resigned from NIH in 1989 (before the investigation) to take another job in New Mexico. His departure was not related to the investigation. Thus, O'Leary's situation more neatly fits the abusive discharge paradigm. Second, in O'Leary's case, there was an established policy, as articulated in a manual, that no one could be discharged because of his or her political affiliation, which was thought to be a major issue in the case. See O'Leary, 545 A.2d at 18. By contrast, neither NIH nor any other agency to which

8

Popovic points has a policy that prohibits an employer from refusing to hire an individual under investigation for misconduct. Finally, O'Leary's claim was determined to have involved her First Amendment rights, while Popovic's First Amendment rights are not at issue here.

The above points illustrate a more general reason why Popovic's claims fail. There is no established public policy in Maryland that an individual must be hired merely because he has the requisite professional qualifications. In essence, Popovic is claiming that NIH's refusal to hire him is a tort because he is a world class researcher who, if given the opportunity, would save thousands of lives with AIDS breakthroughs. By contrast, individuals who have raised abusive discharge claims generally have done so where employers either made them choose between committing some criminal act and losing the job or discharged them for exercising some constitutionally protected right. See, e.g., Milton v. ITT Research Inst., 138 F.3d 519, 522 (4th Cir. 1998); O'Leary, 545 A.2d at 18-20 (exercising a constitutionally protected right). Neither of those situations applies to Popovic.

Finally, Popovic also raises due process claims. He alleges that the government "ignored exculpatory evidence, and failed to share evidence with [him or] inform him of who his accusers were. . . ." While he cloaks the claims in terms of negligence, they clearly are claims that his investigation was not conducted fairly. As such, they are constitutional claims: (1) that federal law controls; and (2) for which a private person (who is not acting under color of state law) would not be liable. See 28 U.S.C. § 2674(b) (1994) (stating that the United States is to be liable to "the extent of a private person"); FDIC v. Meyer, 510 U.S. 471, 475-78 (1994) (holding that, inter alia, plaintiff's constitutional claim -- i.e., a deprivation of a property interest in continued employment without due process -- is not cognizable under the FTCA). Thus, Popovic's argument fails.

IV.

After dismissing Popovic's claims with prejudice, the district court refused to allow him to amend his complaint. The denial of leave to amend a complaint is reviewable for abuse of discretion. See Ward

9

Electronics v. First Commercial Bank, 819 F.2d 496, 497 (4th Cir. 1987). Popovic claims that the court abused its discretion because he could have amended his complaint to state a cause of action. See Bank v. Pitt, 928 F.2d 1108, 1112 (11th Cir. 1989).

The district court did not abuse its discretion. Although leave to amend is to be "freely granted" whenever the "interests of justice require," see FED. R. CIV. P. 15(a), the court need not grant leave to amend where such a grant would be futile -- i.e., where the plaintiff would not be able to recast his claim to state a cause of action. See Forman v. Davis, 371 U.S. 178, 182 (1962). Here, Popovic's claims of negligence and invasion of privacy still could not be -- and were not -- recast into a cause of action that reflected anything other than claims of defamation and malicious prosecution. In the amended complaint, he still refers to the investigation as a "witch hunt," and still complains of ORI's failure to consider "exculpatory evidence," and that ORI "knew or should have known that its disclosures were false and acted with reckless disregard for the truth. . .." J.A. at 247. Thus, as base, his amended complaint states that false information was leaked and that the information damaged his reputation. Therefore, it would have been futile to permit Popovic to amend his complaint.

In light of our decision to affirm the dismissal of Popovic's complaint, we need not address the question of whether it was filed in time.

The judgment is accordingly

AFFIRMED.

10