**Ellen SCHNEIDER, Eugene Schneider, David Sleight, et al., Plaintiffs–Appellants,**

v.

**USA, Clayton K. Yeutter, Neal Sox Johnson, et al., Defendants–Appellees.**

No. 90–1938.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 27, 1990.

Decided July 10, 1991.

**957**

Before CUMMINGS, COFFEY and MANION, Circuit Judges.

COFFEY, Circuit Judge.

The plaintiffs brought this action pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* for personal injuries and property damages arising from construction defects in manufactured homes. The district court granted the government's motion for summary judgment on the ground that the plaintiffs' claims were barred by the misrepresentation exception to the Federal Tort Claims Act, 28 U.S.C. § 2680(h). We affirm.

## I. FACTS AND DISPOSITION BELOW

The plaintiffs are owners of factory-built houses manufactured by Tri State Homes, Inc. ("Tri State"), manufactured in Mercer, Wisconsin from 1970 to 1978 and marketed in Northern Wisconsin, Northern Minnesota and the upper peninsula of Michigan. In January 1971, the Department of Housing and Urban Development ("HUD") issued a Regional Letter of Acceptance to Tri State after HUD had reviewed the plans and specifications for the models at issue. This letter of acceptance stated that the proposed construction of the Tri State models and the materials listed in Tri State's plans and specifications met HUD's Minimum Property Standards. The plaintiffs purchased the houses from Tri State with federal financial assistance from the Farmers Home Administration ("FmHA") or HUD. Without this Letter of Acceptance or an equivalent review of Tri State's specifications by the FmHA, buyers could not receive federal financing to purchase the houses from Tri State.[1]

The day to day construction of the houses by Tri State in its factory in Mercer, Wisconsin was neither supervised by either FmHA nor HUD. The government's only involvement in the construction of the houses was a HUD two or three hour semi-

Steven J. Schooler, James A. Olson, Marsha M. Mansfield, Lawton & Cates, Madison, Wis., for plaintiffs-appellants.

Jeffrey Axelrad, Phyllis J. Pyles, Marie L. Hagen, Dept. of Justice, Torts Branch, Civ. Div., Washington, D.C., Richard D. Humphrey, Asst. U.S. Atty., Madison, Wis., for defendants-appellees.

1. Compliance with HUD's Minimum Property Standards was required before HUD would issue a Letter of Acceptance. If the plans and specifications did not satisfy the Minimum Property Standards, Tri State would have had to amend the plans in order to insure their compliance. Moreover, once the houses were built, Tri State had to certify to HUD that each house was built in compliance with the Letter of Acceptance and with the Minimum Property Standards.

annual inspection at the Tri State factory. The purpose of these visits was to determine if the materials used in the construction of houses conformed with the materials listed in the specifications. Thus, the inspectors did not test the materials for compliance with HUD's Minimum Property Standards, but rather, during their semi-annual visits to the Tri State factory, attempted to insure that the materials being used were the same as those approved in the Letter of Acceptance (the inspectors relied on the earlier determination by the HUD Regional Office that the materials listed in the Letter of Acceptance satisfied HUD's Minimum Property Standards).

Many applicants received financing from FmHA for the purchase of the houses and submitted copies of their prospective dwelling specifications with their applications to the appropriate FmHA county office. The FmHA supervisor did not independently review the specifications to determine whether they met the minimum property standards but instead relied on the HUD regional letter of acceptance and Tri State's certification that the house was built with the materials that met the Minimum Property Standards.

Tri State's construction design called for the use of sheathing paper, which is placed between the wood board sheathing of the outer walls and the siding to reduce air infiltration. The plans and specifications submitted by Tri State to HUD stated that Thilco 30/30 building paper would be used as sheathing paper on the factory-built houses. HUD's Minimum Property Standards in effect during 1970 to 1978 required that the sheathing paper used have a permeability ("perm") rating of at least 5 perms. However, the sheathing paper used on the plaintiffs' houses had a perm rating of less than 1 perm. Thus, the sheathing paper was inadequate and trapped moisture in the wall cavity and frequently caused the sheathing to rot.

The plaintiffs brought claims against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*, alleging personal injuries and property damages arising from the defective factory-built houses.[2] The plaintiffs claim that the government's inspection of the plans and specifications was undertaken for the benefit of the plaintiffs pursuant to the requirements of the Federal Financial Assistance Programs. As a consequence of the use of impermeable sheathing paper, the plaintiffs claim that the government was negligent in its inspection and supervisory responsibilities, thus causing their personal injuries and property damage. On March 23, 1990, the district court granted the government's motion for summary judgment ruling that the plaintiffs' claims were barred by the misrepresentation exception to the Federal Tort Claims Act, 28 U.S.C. § 2680(h). The plaintiffs appeal.

## II. ISSUE FOR REVIEW

The issue before us is whether the district court properly concluded that the plaintiffs fail to raise a claim independent of the tort of misrepresentation. The plaintiffs in essence argue that their claim is not barred because they were not harmed by relying on the government's misstatements, but rather by the government's failure to detect the proposed use of inadequate sheathing material in Tri State's submitted plans. The government contends that the plaintiffs' claims fall within the misrepresentation exception because they arise out of the government's communication of faulty information through its approval of the materials used

---

**2.** In their opening brief, the plaintiffs allege the following personal injuries:

"A. Upper airway disease characterized by symptoms to the nose, sinuses, ears, throat, and mouth breathing diagnosed as mixed rhinosinusitis related to infections and allergies secondary to exposure to mites, molds and other antigens;

"B. Lower airway disease characterized by hyper-reactive airways diagnosed as asthmatic bronchitis related to infections and allergies secondary to exposure to mites, molds and other antigens;

"C. Chronic mixed headaches secondary to sinus congestion and muscle tension; and

"D. Annoyance Irrigation syndrome."

The property damage alleged by the plaintiffs included "the rotting of the plywood sheathing of the exterior walls of their homes."

in Tri State's houses in its Letter of Acceptance.

Our review of the district court's grant of summary judgment in favor of the government is *de novo:* "[W]e must decide whether the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Dribeck Importers v. G. Heileman Brewing Co.,* 883 F.2d 569, 573 (7th Cir.1989) (citations omitted). "A genuine issue of material fact exists only where 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Id.* at 573 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)).

## III. ANALYSIS

The Federal Tort Claims Act ("FTCA") is a limited waiver of sovereign immunity that permits an injured claimant to recover damages from the United States "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). The FTCA exempts the government from liability for specific torts, one of which is misrepresentation: "The provisions of this chapter and section 1346(b) of this title shall not apply to—... (h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, *misrepresentation,* deceit, or interference with contract rights." 28 U.S.C. § 2680 (emphasis added). These exceptions define this court's jurisdiction to entertain a suit against the United States: "It is elementary that '[t]he United States, as sovereign, is immune from suit save as it consents to be sued ..., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980) (quoting *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769–70, 85 L.Ed. 1058 (1941)).

The plaintiffs argue that their claim is not barred by the misrepresentation exception because they were not harmed by relying on the government's misstatements, but rather by the government's failure to detect the use of impermeable sheathing material in Tri State's submitted plans. The defendants allege that Tri State would not have been able to market the houses had the government advised Tri State that the sheathing used in the construction of the houses did not comply with HUD's Minimum Property Standards. Thus, the plaintiffs' argument is based on the alleged negligence underlying HUD's determination that the plans and specifications of the houses complied with the Minimum Property Standards. Whether the plaintiffs' characterization of their claim falls outside of the misrepresentation exception is dependent upon our analysis of the two leading Supreme Court cases on the issue, *United States v. Neustadt,* 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961), and *Block v. Neal,* 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983).

*Neustadt* involved plaintiffs who purchased a house after an inspection by the Federal Housing Administration ("FHA") for the purposes of determining eligibility for FHA mortgage insurance pursuant to § 203 of the National Housing Act of 1934, 12 U.S.C. § 1709. (The FHA later became part of HUD in the early 1970's). The mortgage insurance program was essentially the same as the HUD mortgage insurance program involved in the case before us. After an FHA inspection and appraisal of the house found no defects, the plaintiffs took possession. A short time later, the foundation of the house began to shift, causing damage to the foundation, walls, and ceilings. The plaintiffs brought suit against the government, claiming that they were induced to purchase the house in reliance upon FHA's representation that the house had a certain market value, and that a non-negligent in-

spection would have disclosed the poor drainage conditions that led to the structural damage. The Fourth Circuit upheld judgment for the plaintiffs. The court found that the plaintiffs "could recover on the sole basis of the underlying negligence" and "that the misrepresentation was 'merely incidental' to the 'gravamen' of the claim, i.e., 'the careless making of an excessive appraisal so that [the plaintiffs were] deceived and suffered substantial loss.'" *Neustadt*, 366 U.S. at 704, 81 S.Ct. at 1299 (citations omitted).

The Supreme Court reversed, holding that the plaintiffs' claim was barred by the misrepresentation exception of the FTCA:

"To say, as the Fourth Circuit did, that a claim arises out of 'negligence' rather than 'misrepresentation,' when the loss suffered by the injured party is caused by the breach of a 'specific duty' owed by the government to him, i.e., the duty to use due care in obtaining and communicating information upon which that party may reasonably be expected to rely in the conduct of his economic affairs, is only to state the traditional and commonly understood legal definition of the tort of 'negligent misrepresentation,' ...."

*Neustadt*, 366 U.S. at 706–07, 81 S.Ct. at 1300. The court further stated:

"The compulsory disclosure provision of § 226 is but one of numerous instances in which Congress has relegated to a governmental agency the duty either to disclose directly, or to require private persons to disclose, information for the assistance and guidance of other persons in the conduct of their economic and commercial affairs. In practically all such instances, it may be said that the Government owes a 'specific duty' to obtain and communicate information carefully, lest the intended recipient be misled to his financial harm. While we do not condone carelessness by the government employees in gathering and promulgating such information, neither can we justifiably ignore the plain words Congress has used in limiting the scope of the Government's tort liability.'"

*Id.* at 710–11, 81 S.Ct. at 1302.

Like the plaintiffs in *Neustadt*, the plaintiffs in the case before us relied on government-supplied misinformation in one of its own documents when making their decision to purchase a house: plaintiffs relied on HUD's Letter of Acceptance that the Tri State houses were constructed in accordance with government standards. The plaintiffs have alleged no injury they would have suffered *but for* the communication of HUD's evaluation to Tri State and FmHA. Thus, the alleged duty to insure that the materials used in the construction of Tri State houses complied with the Minimum Property Standards is no different from the alleged duty of the FHA to inspect and appraise houses in a non-negligent manner in which *Neustadt* held was barred by the misrepresentation exception.

In *Block v. Neal,* the Supreme Court again recognized that "the essence of an action for misrepresentation, whether negligent or intentional, is a communication of misinformation on which the recipient relies." *Block,* 460 U.S. at 296, 103 S.Ct. at 1093. The plaintiff in *Block,* like the plaintiffs in the case before us, obtained a loan from the FmHA for the construction of a pre-fabricated house. The agreement between the plaintiff and the FmHA provided that the FmHA would provide financing for the plaintiff, that the work of the builder would conform to the plans of the FmHA, and that the FmHA had the right to inspect and test all materials and workmanship and to reject any that were defective. A FmHA official inspected the plaintiff's house both during the construction and upon its completion. After the third inspection, the official issued a final report noting that the house was in compliance with FmHA-approved drawings and specifications. After moving into the house, the plaintiff discovered numerous defects. The builder subsequently failed to comply with the FmHA's request to cure the defects in accordance with the builder's warranty to the purchaser, and FmHA declined to pay for certain defects. The Sixth Circuit found that the plaintiff's complaint was not barred by the misrepresentation exception because 28 U.S.C. § 2674 of the FTCA authorizes suits against the government for

the negligence of a federal agency in performing a voluntary undertaking. *Block*, 460 U.S. at 293, 103 S.Ct. at 1091.

The Supreme Court upheld the Sixth Circuit, finding that the plaintiff's Good Samaritan claim was not barred by *Neustadt* and the misrepresentation exception:

> "Neustadt alleged no injury that he would have suffered independently of his reliance on the erroneous appraisal. Because the alleged conduct that was the basis of his negligence claim was in essence a negligent misrepresentation, Neustadt's action was barred under the 'misrepresentation' exception.... In this case, unlike *Neustadt*, the Government's misstatements are not essential to plaintiff's negligence claim. The Court of Appeals found that to prevail under the Good Samaritan doctrine, Neal must show that FmHA officials voluntarily undertook to supervise construction of her house; that the officials failed to use due care in carrying out their supervisory activity; and that she suffered some pecuniary injury proximately caused by FmHA's failure to use due care. FmHA's duty to use due care to insure the builder adhered to previously approved plans and cure all defects before completing construction is distinct from any duty to use due care in communicating information to the respondent. And it certainly does not 'appea[r] beyond doubt' that the only damages alleged in the complaint to be caused by FmHA's conduct were those attributable to Neal's reliance on FmHA's inspection reports."

*Block*, 460 U.S. at 296–97, 103 S.Ct. at 1093–94. (Citations and footnotes omitted). The Court went on to hold that "[a]lthough FmHA in this case may have undertaken both to supervise construction of Neal's house and to provide Neal information regarding the progress of the construction, Neal's action is based solely on the former conduct." *Id.* at 299, 103 S.Ct. at 1094–95. The Court ruled that the misrepresentation exception did not apply because there was a separate cause of action for the negligent supervision of the construction of the plaintiff's house that was distinct and separate from any misstatements made to the plaintiff.

The plaintiffs in the case before us, unlike the plaintiff in *Block*, have alleged no claim for negligent supervision of the construction of Tri State's houses. Indeed, at oral argument, counsel for the plaintiff specifically stated the inspection of Tri State's factory approximately two times per year for two to three hours by a HUD official was "irrelevant" to the disposition of this case. Unlike *Block*, ours is a case where the government's misstatements are essential to the plaintiffs' claims: In order for Tri State to have been able to sell houses to the plaintiffs that were eligible for government financing, HUD had to issue a Regional Letter of Acceptance listing those Tri State houses that had been approved. The plaintiffs relied on the misstatement in this Letter of Acceptance that the Tri State houses were constructed in accordance with government standards (specifically, that permeable sheathing paper was used rather than Thilco 30/30 paper), and unlike the plaintiff in *Block*, have not alleged separate facts which would establish a duty independent of the misrepresentation exception. Thus, the plaintiffs' reliance on *Block* is without merit.

Our case is like *Neustadt*, where plaintiffs who relied on misinformation in a government document when making their decision to purchase a home were found to have stated claims that fell within the misrepresentation exception. In our case it is clear that the plaintiffs would not have been harmed *but for* the misinformation that was communicated through the Regional Letter of Acceptance. In their brief, the plaintiffs argue that "[h]ad the government used due care, the officials would have determined that using 'Thilco 30/30' as sheathing paper violated the HUD Minimum Property Standards. Had either HUD or FmHA rejected the use of 'Thilco 30/30,' defective homes would not have been turned over to the plaintiffs." This is another way of saying that had Tri State not relied on HUD's misrepresentations, the plaintiffs would not have been injured by purchasing the defective homes. Thus,

the plaintiffs' claims fall squarely within the misrepresentation exception.

Our review of other cases supports the finding that the plaintiffs' claims fall within the misrepresentation exception. In *Baroni v. United States*, 662 F.2d 287 (5th Cir.1981), *cert. denied*, 460 U.S. 1036, 103 S.Ct. 1426, 75 L.Ed.2d 787 (1983), purchasers of federally insured housing brought suit after a flood level location fixed by the FHA proved to be incorrect. This miscalculation made by the FHA employees was communicated to the developer who filled the lots to an elevation above the predicted flood line, as required by FHA. The plaintiffs in *Baroni* argued that a general tort was committed when the agency miscalculated the flood level, and like the plaintiffs in the case before us, they contended that a duty was imposed under state law once the agency undertook to establish the flood level. The Fifth Circuit rejected this argument:

> "Assuming that the government's undertaking created a duty under state law to determine the flood level non-negligently, the damages complained of by the plaintiffs still result solely from the fact that the government communicated its miscalculation to the developer who relied on it, and that reliance eventually caused the plaintiffs' damage. *As noted above, the plaintiffs are prevented from recovering for these damages under a theory of misrepresentation either because of the misrepresentation exception to the Federal Tort Claims Act in § 2680(h) or because of the fact that a party who has been damaged by, but who has not relied directly on the misrepresentation, does not have a cause of action for misrepresentation.* To find that the plaintiffs would be barred from recovering their damages under a direct theory of misrepresentation but to allow them to recover under a theory of 'general tort' liability for damages that would stem from an indirect reliance on the same acts by the government would

undermine the misrepresentation exception to the Federal Tort Claims Act." *Baroni*, 662 F.2d at 289 (emphasis added).

Also instructive is *Preston v. United States*, 596 F.2d 232 (7th Cir.1979). In *Preston* farmers brought action under the FTCA against the government for damages they suffered as a result of storing grain in a government approved warehouse that went bankrupt. The farmers contended that the agency's approval of the facility "effectively invited and encouraged farmers" to store grain there. *Preston*, 596 F.2d at 234. Like the plaintiffs in the case before us, the farmers also argued that the agency assumed a duty to the plaintiffs to exercise reasonable care in determining whether the facility was a safe place in which to store grain and to warn them when it became unsafe. Also like the plaintiffs in our case, the plaintiffs in *Preston* attempted to avoid characterizing their claim as one based on a government misrepresentation. The court stated:

> "It is not unusual for these and other plaintiffs to describe their cause of action in a way calculated to avoid the misrepresentation exception, but the courts have consistently looked behind the plaintiffs' characterization. On analysis, we think it clear that what plaintiffs are complaining about is an implied misrepresentation. They have alleged that the approval and subsequent auditing in the warehouse by government agencies created an aura that the warehouse was safe, and that they relied to their detriment on this apparent approval by the government agencies.... [T]his amounts to an allegation of misrepresentation by implication."

*Preston*, 596 F.2d at 237–38 (citations omitted). Similarly, in the present case, the government's communication of its approval of Tri State's plans created the assurance that the plaintiffs relied on to their detriment. No matter how artfully the plaintiffs attempt to characterize their claim, it is clear that it is barred by the misrepresentation exception of § 2680(h), because no injuries would have occurred *but for* the misstatements in the Regional Letter of Acceptance.[3]

---

**3.** Numerous other cases support our decision

that the plaintiffs' claims fall within the misrep-

The plaintiffs also argue that "Wisconsin law recognizes a duty of care by the government to inspect plans and specifications based upon the Good Samaritan Doctrine." However, even if Wisconsin law created a duty of care to inspect plans and specifications based on the Good Samaritan doctrine as the plaintiffs claim, the damages they allege still result from the same source—the government's misrepresentation. The plaintiffs' claims would not have arisen if the government had not issued the Letter of Acceptance regarding the type of sheathing paper that was required. As the Supreme Court noted in *Neustadt,* regardless of whether state law would "allow recovery under analogous circumstances," if the claim falls within one of the exceptions, the court lacks jurisdiction to entertain the suit. *Neustadt,* 366 U.S. at 705–06, 81 S.Ct. at 1299. "[F]ederal courts lack subject matter jurisdiction to entertain claims against the United States falling within one of the statutory exceptions to the FTCA...." *City of Garland v. Zurn Industries, Inc.,* 870 F.2d 320, 326 (5th Cir.1989). Indeed, the courts in both *Merklin v. United States,* 788 F.2d 172, 174 (3d Cir.1986) and *Wells v. United States,* 655 F.Supp. 715, 719 (D.D.C.1987), *affirmed on other grounds,* 851 F.2d 1471 (1988), *cert. denied,* 488 U.S. 1029, 109 S.Ct. 836, 102 L.Ed.2d 969 (1989), held that the application of the states' respective Good Samaritan doctrines were barred by § 2680(a). Thus, the plaintiffs' potential claims under Wisconsin's Good Samaritan doctrine are clearly barred by the misrepresentation exception.

## IV.  CONCLUSION

HUD's Letter of Acceptance which approved Tri State's plans and specifications was the sole cause of the plaintiffs' injuries: The plaintiffs would have suffered no injuries *but for* the communication of inaccurate information regarding the sheathing material. Thus, our case is analogous to *Neustadt* because the plaintiffs do not raise a claim independent of the tort of misrepresentation, and as a result, their claims against the government are barred. Therefore, the decision of the district court is

Affirmed.

---

resentation exception. For instance, in *City of Garland v. Zurn Industries, Inc.,* 870 F.2d 320 (5th Cir.1989), the court held that a claim based on an agency's negligence in the analysis, testing, and eventual approval of the design of a facility was barred by the misrepresentation exception because the claim was based on reliance on inaccurate data generated by a federal agency; *see also Anglo–American & Overseas Corp. v. United States,* 242 F.2d 236 (2nd Cir.1957); *Williamson v. U.S. Department of Agriculture,* 815 F.2d 368 (5th Cir.1987); *Saxton v. United States,* 456 F.2d 1105 (8th Cir.1972); and *Janowsky v. United States,* 913 F.2d 393 (7th Cir.1990).