Vincent Scott RUSS and Emily L. Russ, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. Civ. 1:99CV00488.

United States District Court, M.D. North Carolina.

Jan. 17, 2001.

B. Ervin Brown, II, Moore and Brown, Winston–Salem, NC, Anna Engelhard Caldwell, Winston–Salem, NC, for Vincent Scott Russ, Emily L. Russ.

Lynne P. Klauer, Office of U.S. Atty., Greensboro, NC, for U.S.

## MEMORANDUM OPINION

BULLOCK, District Judge.

Plaintiffs Vincent Scott Russ and Emily L. Russ have filed claims against the United States of America ("Government") alleging that Vincent Scott Russ was injured on or about August 3, 1997, when he fell from a wheelchair ramp at his home. The ramp was constructed by Michael Russell Construction Company with a $4,100.00 grant approved by the Veterans Administration ("VA") pursuant to the Home Improvement and Structural Alteration ("HISA") program. Plaintiffs have

brought this action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), alleging negligence and alleging loss of consortium under North Carolina law. The Government has moved for summary judgment on both claims. For the following reasons the court will grant the Government's motions for summary judgment and dismiss the case.

## FACTS

The following facts are established in the pleadings, affidavits, deposition testimony, and exhibits offered by the parties. Where there are disputes, each party's position is given.

Plaintiff Vincent Scott Russ is a disabled veteran who applied for and was granted benefits under the HISA program. The HISA program is directed by the Department of Veterans Affairs and administered by the Prosthetics and Sensory Aids Services Division ("PSAS"). Upon approval of a HISA application, a veteran with a service-related disability is eligible to receive a lifetime grant of up to $4,100.00 for construction to provide access to his or her home or for home improvements or structural alterations necessary to ensure continuation of treatment for the veteran. The Government claims that the VA does not contract with the person or firm selected by the veteran to undertake the construction and does not take responsibility for services obtained with a HISA grant.

In May 1997, Vincent Scott Russ met with the VA Chief of PSAS, Dwight C. Fields, in Salisbury, North Carolina. Vincent Scott Russ wanted a wheelchair ramp built on the front of his home and a deck built on the back of his home. Fields informed Russ about the HISA program and gave him an application. Russ was provided with a list of contractors' names and addresses. Plaintiffs allege that under HISA a veteran must solicit contractor bids before a contractor is selected. Plaintiffs contend that Fields told Russ that if he chose Michael Russell Construction Company to perform the work he would not have to solicit other bids. Plaintiffs further allege that Fields said he knew

Michael Russell and could vouch for him and that Russell performed many jobs for the VA. Allegedly Fields also said that no complaints had been filed against Russell and that Russ's application would be approved immediately if he chose Russell as the contractor. Defendant denies that any of these remarks were made.

Unbeknownst to Plaintiffs, Russell was not a licensed contractor in North Carolina and he did not obtain the necessary permits for the construction he undertook at Plaintiffs' residence. Had he known this information, Vincent Scott Russ would not have chosen Russell to perform the construction.

Vincent Scott Russ's HISA application was approved in July 1997. Allegedly Fields unilaterally approved the application without properly following the internal procedures of the VA. Construction began at Plaintiffs' home that same month. Vincent Scott Russ observed that the construction was of poor quality and reported this to Fields on or about July 31, 1997. On or about August 1, 1997, Vincent Scott Russ provided photographs of the construction to Fields. Vincent Scott Russ alleges that he made numerous requests for inspections of the ramp. Plaintiffs claim that Fields denied these requests and encouraged Vincent Scott Russ to use the ramp. The Government contends that the VA had no duty to inspect the ramp and admits that the VA did not inspect the ramp.

Because construction on the deck was underway but not completed at the back door of Plaintiffs' home, the ramp at the front door was the only means of access to the home. Vincent Scott Russ was walking down the ramp on August 3, 1997, when the floor caved in and his foot was trapped, causing him to fall down and off the ramp. As a result of the fall, Russ has allegedly suffered severe painful and permanent injuries to his pelvis, shoulder, hand, and back.

Plaintiffs filed an amended complaint in this action on March 15, 2000, alleging

negligence under the Federal Tort Claims Act and loss of consortium under North Carolina law.

## DISCUSSION

Summary judgment must be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the burden of persuasion on the relevant issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party may survive a motion for summary judgment by producing "evidence from which a [fact finder] might return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When the motion is supported by affidavits, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *see also Cray Communications, Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 393–94 (4th Cir.1994) (moving party on summary judgment motion can simply argue the absence of evidence by which the non-movant can prove her case). In considering the evidence, all reasonable inferences are to be drawn in favor of the non-moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [fact finder] could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505.

Plaintiff Vincent Scott Russ claims that the Government is liable for his injuries due to negligence under the Federal Torts Claims Act, 28 U.S.C. §§ 1346(b), 2671–80. Plaintiff Emily L. Russ seeks recovery for loss of consortium under North Carolina law. The Government has moved for summary judgment on both claims on the grounds that this court lacks jurisdiction over Plaintiffs' claims. The Government further argues that the discretionary function exception bars this action, that it is not responsible for negligence of an independent contractor, and that Plaintiffs have not stated a cause of action for negligence under North Carolina law.[1]

■ The United States as sovereign is immune to suit except as it consents to be sued. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980). A plaintiff bringing a claim against the United States bears the burden of identifying an "unequivocal" waiver of sovereign immunity. *Williams v. United States*, 50 F.3d 299, 304 (4th Cir.1995). Under the Federal Tort Claims Act the United States waives sovereign immunity for tortious acts for which a private individual would be liable in similar circumstances. 28 U.S.C. §§ 1346(b), 2671–80. The subject matter jurisdiction granted to the federal courts pursuant to a waiver of sovereign immunity by the United States must be strictly construed. *McMahon v. United States*, 342 U.S. 25, 27, 72 S.Ct. 17, 96 L.Ed. 26 (1951). The FTCA provides certain express exclusions from the United States' waiver of sovereign immunity. One of those exceptions is for any claim arising from misrepresentation or deceit. 28 U.S.C. § 2680(h).[2] The Government argues that the claims brought by Plaintiffs are claims of intentional or negligent misrepresentation and thus fall under this exception of the FTCA.

■ In response, Plaintiffs first contend that the misrepresentation exception applies only in a commercial or financial set-

---

1. Several of these arguments are advanced in the Government's memorandum in support of its motion to dismiss or for summary judgment. (Pldg. No. 48). The court has considered Plaintiffs' response although Plaintiffs' response was untimely, despite an extension of time, and exceeded the proper page limit. N.C.M.D. Local Rule 7.3(d). This would ordinarily result in Defendant's motion being granted as an uncontested motion. N.C.M.D. Local Rule 7.3(k).

2. This section states, in part, that "[t]he provisions of this chapter and section 1346(b) shall not apply to ... (h) Any claim arising out of assault, battery, ... misrepresentation, [or] deceit."

ting, and does not apply to claims involving personal injury. Plaintiffs argue that negligent misrepresentation is the failure to use due care in obtaining and communicating information upon which a party may rely in the conduct of his business or economic affairs, and is not applicable to a case involving personal injury. (Pls.' Mem. in Opp'n to Def.'s Mot. for Summ.J., p. 10). Second, Plaintiffs maintain that because they allege simple negligence and loss of consortium, not misrepresentation, the United States has waived its sovereign immunity in this case.

Two Supreme Court decisions establish the framework for applying the FTCA misrepresentation exception. *See Block v. Neal*, 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983), and *United States v. Neustadt*, 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961). In *United States v. Neustadt*, the Supreme Court found that a claim brought by home purchasers alleging that they had relied on an appraisal completed by the Federal Housing Administration ("FHA") arose from misrepresentation and therefore was not actionable under the FTCA. The home purchasers were furnished a report of an inaccurate FHA inspection and appraisal and were thereby induced to buy a house in excess of its fair market value. The Supreme Court described the traditional definition of negligent misrepresentation as the failure to "use due care in obtaining and communicating information upon which [a] party may reasonably be expected to rely in the conduct of his economic affairs." *Neustadt*, 366 U.S. at 706, 81 S.Ct. 1294.

In *Block v. Neal* the Supreme Court found that the misrepresentation exception did not apply to a homeowner's claim that the Farmers Home Administration ("FmHA") failed to properly inspect and supervise construction of her home. The plaintiff contracted for her home to be built with a loan from FmHA. An FmHA official inspected the site on three occasions, each time reporting that construction was proper. After moving in, the plaintiff discovered problems with the home and a subsequent inspection re-vealed numerous defects in the materials and workmanship in the construction of the house. *Block*, 460 U.S. at 292, 103 S.Ct. 1089. Although FmHA reported the results of their inspections to the plaintiff, the Supreme Court found that plaintiff's claim did not arise from misrepresentation, but rather from FmHA's failure to properly supervise construction of the plaintiff's home. *Id.* at 299, 103 S.Ct. 1089.

Both of these cases involve plaintiffs' purchase of homes, clearly economic affairs. Plaintiffs in the case at bar contend that their claims can be distinguished because they are based on personal injury rather than financial injury. The court first notes that although Plaintiffs seek damages for personal injuries, the construction of the ramp to Plaintiffs' home was an economic affair in that Vincent Scott Russ contracted with a company for work to be done to his house. However, it is not necessary to fit Plaintiffs' injuries into a financial sphere because the misrepresentation exception is not limited to claims for financial loss as opposed to personal injury.

Despite the language of *Neustadt* that describes the traditional tort of misrepresentation as involving "economic affairs," 366 U.S. at 706, 81 S.Ct. 1294, the misrepresentation exception of the FTCA has been applied to claims involving personal injury. *See Schneider v. United States*, 936 F.2d 956 (7th Cir.1991), *cert. denied*, 502 U.S. 1071, 112 S.Ct. 965, 117 L.Ed.2d 131 (1992); *see also Jimenez–Nieves v. United States*, 682 F.2d 1, 4 (1st Cir.1982) (suggesting that the tort of misrepresentation is not limited to the commercial context); *Mullens v. United States*, 785 F.Supp. 216 (D.Me.1992) (applying the misrepresentation exception to a claim involving personal injury); *Lloyd v. Cessna Aircraft Co.*, 429 F.Supp. 181, 187 (E.D.Tenn.1977) (stating that misrepresentation exception applies to actions involving personal injury); *Vaughn v. United States*, 259 F.Supp. 286 (N.D.Miss.1966) (applying misrepresentation exception to claim involving personal injury). In *Schneider* the Seventh Circuit

held that plaintiffs' claims for personal injuries and property damages arising from defectively constructed homes were properly dismissed for lack of jurisdiction by the district court. The Seventh Circuit applied the framework created by *Neustadt* and *Block* and found that the misrepresentation exception applied to claims brought by homeowners who suffered personal injuries and property damage due to their reliance on the Department of Housing and Urban Development's approval of plans and specifications for construction. *Schneider,* 936 F.2d 956, 961–62.

The situation in the instant case is similar to that in *Schneider.* Plaintiffs relied on Fields' advice about who they should retain to undertake construction at their home. Clearly the advice was terrible, and perhaps given with an ulterior motive. As a result of the poor construction procured in reliance on bad advice, Vincent Scott Russ suffered serious injuries. However, the fact that Plaintiffs suffered personal injuries as opposed to financial injuries does not impact the applicability of the misrepresentation exception under the FTCA.

Next, Plaintiffs argue that, even if the FTCA misrepresentation exception can apply in a case involving personal injury, it does not apply to this case because they allege simple negligence, not misrepresentation. Similarly, Plaintiffs in *Neustadt* avoided characterizing their claims as ones based on misrepresentations. 281 F.2d 596, 601 (4th Cir.1960), *rev'd,* 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961). However,

the Supreme Court held that courts must look beyond the literal meaning of a plaintiff's complaint to determine its true essence. *Neustadt,* 366 U.S. at 703, 81 S.Ct. 1294.

Despite Plaintiffs' attempts to characterize their claims as ones based on simple negligence, the gravamen of the action is misrepresentation.[3] The Government's failure to use due care in communicating information to Vincent Scott Russ is directly related to Plaintiffs' injuries. The Government's misrepresentations are integral to Plaintiffs' claims and are not merely incidental to other negligent conduct.[4] If it were not for the list of possible contractors provided to Vincent Scott Russ and Fields' misrepresentations about the quality of Russell's work, Vincent Scott Russ would not have chosen Russell to build his wheelchair ramp and back deck. Plaintiffs' injuries are directly correlated to false information provided by Fields.

 Plaintiffs contend that the Veterans Health Administration ("VHA") Directive 97–024 outlines the proper procedures that should have been followed by the Government in handling Vincent Scott Russ's application. This directive states, in part, that all VA medical care facilities must establish a local HISA committee and that the Chief, PSAS, or the Director's designee serve as the coordinator of such committee. VHA Directive 97–024 §§ 4f(3), 4f(3)(a) (May 9, 1997) (Pls.' Mem. in Opp'n to Mot. for Summ.J.Ex. C). Although Plaintiffs allege that Fields unilaterally ap-

---

**3.** Plaintiffs contend that proper procedures were not followed in processing Vincent Scott Russ's application for HISA benefits and that this establishes Defendant's negligence. Plaintiffs specifically argue that Russ should have been required to submit a bid and plans or specifications of the proposed construction. Plaintiffs also claim that Russ should have been required to submit verification of the medical necessity of the proposed structural alterations and that written authorization of the project should have been on file. Before construction was begun, Russell submitted a construction proposal that Plaintiffs argue was deficient. Although these allegations may suggest that Fields improperly approved

Russ's application for HISA benefits, the connection to Plaintiffs' injuries is tenuous at best. Adherence to these procedures does not ensure safety of a proposed project. Plaintiffs simply cannot allege the necessary causal link between the improper processing of Russ's application and Plaintiff's subsequent injuries to establish a claim of negligence.

**4.** It is illuminating that Plaintiffs themselves state that "perhaps most importantly, Mr. Fields had a duty to refrain from negligently recommending Mr. Russell for the project." (Pls.' Mem. in Opp'n to Mot. for Summ.J., p. 26).

proved Vincent Scott Russ's application without submitting it to a committee, this improper processing of Russ's application was not a proximate cause of Plaintiffs' injuries.

Plaintiffs rely on the deposition of Richard E. Hughes, a former Chief of Prosthetics, to establish that Fields had a duty to inspect the construction undertaken at Plaintiffs' home. However, the evidence does not indicate that the VA had a duty to inspect construction completed under a HISA grant. The Government denies such a duty, and Plaintiffs cannot raise an issue of material fact on this point.[5] Hughes would go to a veteran's home to ensure that the construction project was completed to the veteran's satisfaction. (Hughes Dep. at 11). Hughes stated that he would go to see the project to verify that the project was completed before the final payment was paid to the contractor. (Hughes Dep. at 12). Hughes does not indicate that he was obligated to inspect the quality of construction projects pursuant to any specific directive.

A responsibility to verify that projects are completed before final payment to the contractor is outlined in the VHA Directive 97–024. There is a ninety-day time limit on approved payments to contractors, and "[f]ollow-up on the approved projects as to the status will be the responsibility of the Chief, PSAS, or designee." VHA Directive 97–024 § 4f(5) (May 9, 1997) (Pls.' Mem. in Opp'n to Mot. for Summ.J.Ex. C). Plaintiffs contend that this directive supports their argument that the Government owed them a duty. However, there is no language in the directive that instructs the Chief, PSAS, a designee or anyone else to inspect the quality of construction undertaken pursuant to a HISA grant. "Follow-up" regarding the "status" of a project does not indicate that the Government has a duty to inspect the engineering, quality, or materials of the project. This phrase indicates that the Chief, PSAS, or designee must make sure the work is completed prior to the final payment to the contractor, especially since this phrase directly follows the ninety-day limitation regarding payment. This interpretation also coincides with Hughes' deposition testimony that he would verify that a project was completed before authorizing a final payment to a contractor. An "inspection" to verify that a project is completed before payment is made is not akin to a "inspection" to examine the quality of construction.

Vincent Scott Russ requested inspection of the ramp and deck because he thought the construction was defective. Such an inspection was never undertaken by the VA. By providing the grant of funds to Plaintiffs for construction, the VA did not undertake a role in the construction itself. The Government's negligence was confined to the false information relayed to Vincent Scott Russ upon which Plaintiffs relied and as a result were injured. Accordingly, Plaintiffs' claims fall within the misrepresentation exception of the FTCA. The United States has not waived sovereign immunity in this action; therefore this court does not have jurisdiction to adjudicate Plaintiffs' claims.

## CONCLUSION

For the foregoing reasons, this action will be dismissed without prejudice for lack of subject matter jurisdiction.

An order and judgment in accordance with this memorandum opinion shall be entered contemporaneously herewith.

---

5. In fact, a veteran receiving HISA benefits, or his authorized representative, must provide written acknowledgment that the VA assumes no responsibility for maintenance or repair of requested improvements, alterations, or installations and that the VA extends no warranties regarding the requested improvements, alterations, or installations. M–1, Pt. I, Ch. 16, § 16.72(a)(2) (Oct. 25, 1993) (Pls.' Mem. in Opp'n to Mot. for Summ.J.Ex. A). This acknowledgment is on Vincent Scott Russ's signed application for HISA benefits. (Pls.' Mem. in Opp'n to Mot. for Summ.J.Ex. B).